# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Melissa Bickel, | ) |
| | ) **CASE NO.  1:13 CV 01529** |
| Plaintiff, | ) |
| | ) **JUDGE PATRICIA A. GAUGHAN** |
| -vs- | ) |
| | ) |
| | ) |
| Broken Rocks Cafe and Bakery, et al., | ) **Memorandum of Opinion and Order** |
| | ) |
| Defendants. | ) |

## Introduction

This matter is before the Court upon the Motion for Summary Judgment filed by

defendants the City of Wooster, Officer Matthew Simon, and Officer Kenneth Linz (the Wooster

defendants) (Doc. 25) and the Motion for Summary Judgment of defendants Broken Rocks Cafe

and Bakery, Glen Grumbling, Lisa Grumbling, and Sarah Stoner (the Broken Rocks defendants)

(Doc. 19). For the reasons that follow, the Wooster defendants' motion is GRANTED IN PART

and DENIED IN PART the Broken Rocks defendants' motion is GRANTED.

## Facts

Plaintiff Melissa Bickel filed this Complaint against defendants Officer Matthew Simon,

Officer Kenneth Linz, the City of Wooster, Broken Rocks Cafe and Bakery, Glen Grumbling,

Lisa Grumbling, and Sarah Stoner.

This lawsuit arose out of an incident that occurred on July 16, 2012. According to

plaintiff, she met a man named Tim Parris for a "blind date" at the cafe. Plaintiff did not know

Mr. Parris and prior to July 16, 2012, she had never met him in person. When plaintiff arrived at the cafe, Mr. Parris had already opened a tab and was drinking a beer. He ordered food and drinks for both of them and plaintiff consumed some, but not all, of it. At most, plaintiff ordered a glass of red wine, a small Greek salad, and a glass of beer for a total of $16.65.

When plaintiff went to the ladies' room, Mr. Parris ordered dessert. Plaintiff never asked that Mr. Parris order her dessert. When she returned to their table, plaintiff found that Mr. Parris was no longer there. Plaintiff learned from server Sarah Stoner that while she was using the restroom, Mr. Parris had packed up his belongings and left the restaurant. Mr. Parris's departure came as a surprise to plaintiff and she immediately sent him a text message and called him. He did not answer the call, but he sent a text response.[1] Ms. Stoner also tried to call Mr. Parris without success.  Mr. Parris did not return to the restaurant that evening.

Ms. Stoner informed plaintiff that she would have to pay the entire bill, which totaled $127.86.  Plaintiff disagreed and offered to pay only for what she herself had ordered.  Ms. Stoner responded by revising the bill to reflect what she believed plaintiff had consumed that evening, in contrast to what she had simply ordered. The revised bill totaled $48.12. When plaintiff refused to pay the revised bill, Ms. Stoner informed her that her refusal to pay would be considered "stealing," and she called the police.  (Plaintiff Declaration).

Officer Linz was dispatched to the cafe, but Officer Simon arrived first since he was already in the vicinity. (Matthew Simon depo. 10-11). Ms. Stoner explained to the officer that plaintiff's date had left without paying, and she asserted that plaintiff was refusing to pay her

---

[1]The plaintiff does not describe the substance of that response.

2

portion of the bill. According to plaintiff, the officer originally asked her to pay the entire bill. She had her debit card in her hand and offered to pay for what she ordered.  But, Officer Simon refused to listen to her and he did not review either the original bill or the revised bill. (Plaintiff Declaration). According to Officer Simon, the plaintiff appeared extremely intoxicated and she was slurring her words. (Simon depo. 16). Plaintiff asserts that she was not intoxicated and had three drinks that evening but was able to think clearly and control her physical movements. (Plaintiff Declaration).

According to Officer Simon, and undisputed by plaintiff, he gave plaintiff numerous opportunities to pay the revised bill in the amount of $48.12. (Simon depo. 33). Plaintiff states that she told the officer and Ms. Stoner that she could not afford to pay. Officer Simon then accused her of theft and applied handcuffs to her wrists.  Officer Simon also grabbed her arm and jerked her off a stool, which caused injury to her arm and shoulder. He squeezed plaintiff's arm tightly and pushed her outside. Officer Simon held her by her upper arms and jerked her in sudden stop and start motions, which caused injury to her wrists. Once they were outside, the officer placed both his hands on her shoulders and spun plaintiff around in a violent jerking motion which caused pain to her neck and shoulders. Plaintiff was compliant and did not resist or attempt to flee or present a threat to anyone. (Plaintiff Declaration).

Once the plaintiff was in the back of the police car, one of the cuffs slipped off her wrist. She brought this to the officer's attention and he became angry and shouted that "he put them on nice the first time." The officer then intentionally and forcefully tightened the handcuffs in order to hurt her wrists. At the time of her arrest, plaintiff weighed approximately 110 pounds and is

3

five feet four inches tall. (Plaintiff Declaration). Officer Simon is approximately six feet tall and weighs about 210 pounds.

After Officer Simon placed plaintiff in the back of the police car, Officer Linz arrived at the cafe. (Simon depo. 36-37). Officer Linz obtained witness statements while Officer Simon transported plaintiff to jail. Officer Linz had no direct contact with plaintiff. (plaintiff depo. 88-90). Plaintiff was processed and jailed at the Wayne County Jail. (Plaintiff Declaration). Officer Simon filed an affidavit of probable cause indicating that the plaintiff was arrested on charges of theft and resisting arrest. (Simon depo. 60-61).

Officer Linz obtained a witness statement from Ms. Stoner and learned that plaintiff's date was Tim Parris. (Linz Report). Officer Linz knew Mr. Parris personally since the third or fourth grade and knew Mr. Parris's parents. (Linz depo. 9-16). On the evening of the incident, Officer Linz visited Mr. Parris's parents' home, but nobody answered the door. (*Id.* 47). Officer Linz then called Mr. Parris's father and left a message for Mr. Parris who later contacted Officer Linz and informed him that he intended to return to the cafe on the following day in order to pay the entire bill of $127.86. Officer Linz informed Mr. Parris that he would follow up with the restaurant the next day. (*Id.* 53-54).

When asked why he did not arrest Mr. Parris, Officer Linz explained that he still needed to conduct a photo lineup. He further indicated that he could not arrest Mr. Parris because he "didn't have proof beyond a reasonable doubt." (Linz depo. 55-57).

The day after plaintiff's arrest, Mr. Parris paid the bill in full. Ms. Stoner informed Officer Linz that the owner of the cafe was not going to pursue criminal charges against Mr. Parris. As a result, Officer Linz felt there was no need to conduct a "photo lineup." (Linz

4

Supplemental Report). In addition, Officer Linz specifically requested that the prosecutor not pursue any criminal charges against Mr. Parris. (*Id.,* Linz depo. 64). Officer Linz did not make any such request with respect to the charges against the plaintiff. (Linz depo. 66).

No charges were brought against Mr. Parris.  But in the months that followed, plaintiff defended against charges of resisting arrest and theft. Plaintiff indicates that the theft charge was dismissed on the eve of trial but that she went to trial on the resisting arrest charge and was found not guilty. (Complaint, Plaintiff Declaration). Plaintiff asserts that as a result of the emotional difficulty of dealing with the incident and her prosecution, she saw a psychologist at the Cleveland Clinic, who diagnosed her with post-traumatic stress disorder. (Plaintiff Declaration, Exhibit 2, p. 13).

The Complaint alleges federal constitutional claims of excessive force against Simon and failure to intervene against Linz (Count One), false arrest against Simon (Count Three) and attendant claims of municipal liability against the City of Wooster (Count Eleven). The plaintiff also alleges claims under Ohio law including assault and battery (Count Two), false arrest (Count Three), intentional infliction of emotional distress (Count Five), and negligence (Count Twelve) against the Wooster defendants.  Plaintiff asserts claims of  negligent hiring, training, and supervision (Count Seven) and *respondeat superior* (Count Eight) against the Broken Rocks defendants. She also asserts claims of abuse of process (Count Four), conspiracy (Count Six), defamation (Count Nine), and defamation *per se* (Count Ten) against all defendants.

The Broken Rocks defendants filed a Motion for Summary Judgment as to the claims against them (Counts Four, Six, Seven, Eight, Nine, and Ten), to which the plaintiff has not filed a response. The Wooster defendants also seek summary judgment as to Counts Four, Six, Nine,

5

and Ten. In her opposition to the City of Wooster's Motion for Summary Judgment, plaintiff expressly submits that she does not oppose dismissal of Counts Four, Six, Seven, Eight, Nine, and Ten.  Therefore, the Court grants the Broken Rocks defendants' Motion for Summary Judgment in its entirety and the Wooster defendants' motion as to Counts Four, Six, Nine, and Ten.

This matter is now before the Court upon the Wooster defendants' Motion for Summary Judgment for the remaining counts.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on

6

its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Analysis**

Counts One, Two, Three, Five, Eleven, and Twelve remain against the Wooster defendants.

#### **(1) Federal Claims**

Counts One, Three, and Eleven assert claims under 42 U.S.C. § 1983.  To prevail on a § 1983 claim, a plaintiff "must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). Both officers have asserted the defense of qualified immunity "which shields government

7

officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In qualified immunity cases, the plaintiff bears this burden; [she] must show that the defendant is not entitled to qualified immunity." *Wysong v. City of Heath*, 260 Fed.Appx. 848, 852 (6th Cir.2008) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991)).

When determining whether the allegedly injured party has met this burden, the Court "typically employs a two-step analysis," asking: "'(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.'" *Smoak*, 460 F.3d at 777 (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir.2005)).

### (a) Excessive force against Officer Simon

In Count One, plaintiff alleges that her constitutional rights were violated when Officer Simon used excessive force when effectuating her arrest and excessively tightening her handcuffs. To determine whether force is excessive, the Court considers whether the use of force was "objectively reasonable" under the circumstances. *Scott v. Harris*, 550 U.S. 372, 381 (2007). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

In evaluating whether an officer's use of force was objectively reasonable, the following factors should be considered: (1) the severity of the crime at issue; (2) the threat of immediate

8

danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments    in circumstances that are tense, uncertain, and rapidly evolving    about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Officer Simon does not dispute that the alleged crime, theft, was not severe. The amount in dispute was somewhere between $16.65 and $48.12. While the plaintiff was charged with resisting arrest, she maintains that she did not resist arrest and that she was compliant with the officer's orders throughout the encounter. It is undisputed that the plaintiff's trial for resisting arrest was resolved in her favor. Plaintiff admits that she had consumed three drinks over the course of the evening, but maintains that she was not intoxicated at the time of her arrest. There is no evidence that the plaintiff presented a threat of immediate danger to officers or bystanders.

As discussed above, plaintiff claims Officer Simon accused her of theft and put handcuffs on her; grabbed her arm and jerked her off of her stool, hurting her arm and shoulder; tightly squeezed her arm and pushed her outside; held her by her upper arms, jerking her with sudden start and stop motions which hurt her wrists; once outside, put both of his hands on her shoulders and spun her around in a violent, jerking motion causing immediate pain in her neck and shoulders; and, once in the police car, intentionally and forcefully tightened the handcuffs so that they hurt both of her wrists.

Plaintiff maintains that as a result of Officer Simon's actions, she had sore red wrists and that the cuffs made a ridge in the skin around her wrists. She says her arm and shoulder were sore for at least a couple weeks, and she had bruising and sustained a muscle strain of her shoulder and arm. Plaintiff did not see a doctor for treatment because she knew the soreness, bruising and

9

redness would go away on their own. Plaintiff also claims she suffered emotional injury as a result of the incident, for which she sought counseling. (Plaintiff Declaration).

The Court accepts the plaintiff's version of the facts and draws all reasonable inferences in the plaintiff's favor. *Slusher v. Carson*,540 F.3d 449 (6th Cir. 2008). If there is sufficient evidence by which a reasonable jury could find in the plaintiff's favor, the Court must deny the motion. *Anderson*, 477 U.S. at 252. Considering that plaintiff, according to her version, was compliant, did not pose an immediate threat, and did not resist or attempt to flee, there is an issue of fact as to whether this force was reasonable.

*Lustig v. Mondeau*, 211 F. App'x 364 (6th Cir. 2006), is instructive. In that case, sheriffs deputies stopped the plaintiff because she was operating a pontoon boat without an illuminated navigation light, a minor offense. The plaintiff was intoxicated, agitated, and screaming at the officers. The deputies grabbed the plaintiff's arms and twisted them behind her back. When the plaintiff verbally protested, the deputies twisted her arms harder. The plaintiff alleged that as a result she suffered pain and permanent injury. The Sixth Circuit concluded that the plaintiff had a clearly established right to be free from such use of force, holding that "it is sufficiently obvious under *Graham* that it would be objectively unreasonable for an officer to gratuitously cause additional pain to a nonviolent and, at most, passively resistant detainee while she is being restrained in a full control hold by two officers." *Id.* at 371-72.

In the present case, there is no evidence that the plaintiff was even passively resistant, and it should have been clear to Officer Simon that the use of gratuitous force on a compliant suspect was unlawful.

10

The Court rejects Officer Simon's argument that the force used to remove plaintiff from the bar stool, guide her outside, and turn her around before placing her into the police car was reasonable under the circumstances because it amounted to only a "moderate" amount of force. The officer points out that she had only "[a] little bruising" and that her shoulder was "sore for a couple of weeks." (Doc. 25 at 8-9). The officer claims that the force alleged in this case amounts to mere "random" pushing and shoving that does not rise to a constitutional violation because "[t]he power to arrest necessarily carries with it the power to use some force to make an arrest." *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987).

The officer cites *Collins v. Nagle*, 892 F.2d 489, 496 (6th Cir. 1989). In *Collins*, the defendant investigators placed the plaintiffs under arrest. When one of the plaintiffs refused to produce identification, two of the defendants grabbed the plaintiff's arms while a third took the plaintiff's wallet from his pocket. The plaintiff claimed that as a result he suffered from a bruised back and arm. The Sixth Circuit concluded that the use of force was justified by the plaintiff's refusal to cooperate by providing identification.

*Collins* and the present case are similar because both involved officers grabbing and holding the plaintiffs' arms, which resulted in bruising. The two cases differ, however, because in *Collins* the plaintiff did not comply with the investigator's orders. In addition, while the arrest was taking place, another suspect, whose intentions were uncertain, appeared on the scene. Here, in contrast, plaintiff  maintains that she was compliant throughout the incident and Officer Simon was not facing any other potential threat.

"[T]he right to be free from physical force when one is not resisting the police is a clearly established right." *Kijowski v. City of Niles*, 372 F. App'x 595, 598 (6th Cir. 2010). For the

foregoing reasons, the Court finds that Officer Simon is not entitled to qualified immunity as to the force used in arresting plaintiff.

Plaintiff also maintains that Officer Simon excessively tightened her handcuffs. The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that (1) plaintiff complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *See Lyons v. City of Xenia*, 417 F.3d 565, 575  76 (6th Cir. 2005).

There is no evidence that plaintiff affirmatively complained to Officer Simon that the handcuffs were too tight or that the officer ignored her complaints. While there is evidence that plaintiff said "ow" and flinched when the handcuffs were applied (plaintiff depo. 87), plaintiff supplies no support for the proposition that this response constitutes a "complaint" for purposes of this analysis. Summary judgment is appropriate as to this portion of Count One.

### (b) False arrest against Officer Simon

Count Three alleges a § 1983 claim for unlawful arrest against Officer Simon. A claim for unlawful arrest turns on whether the officer had probable cause to arrest under the Fourth Amendment. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579-80 (6th Cir. 2003). As with a claim of excessive force, it is the Court's duty to answer the question whether the officer's actions were reasonable under the circumstances. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause

exists when "the facts and circumstances within [the officer's] knowledge and of which [he or she] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

The question here is whether there is evidence by which a reasonable jury could conclude that Officer Simon did not have probable cause to arrest plaintiff for theft. Ohio's theft statute provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
>> (1) Without the consent of the owner or person authorized to give consent;
>> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>> (3) By deception;
>> (4) By threat;
>> (5) By intimidation.
>
> (B)(1) Whoever violates this section is guilty of theft.

Ohio Revised Code § 2913.02.

Plaintiff maintains that summary judgment should be denied because there is no evidence that she had the intent to deprive the cafe of goods or services at the time that she acquired them. In support, plaintiff cites *Brooklyn v. Fouche*, 2006 WL 134824 (Ohio Ct. App. Jan. 19, 2006), for the proposition that a conviction for the theft of food will not stand where there is no evidence that the patron refused to pay for the items he ordered. Plaintiff points out that she had her debit card in her hand, and she offered to pay for what she ordered which amounted to $16.65.

Even with the evidence viewed in the plaintiff's favor, Officer Simon's belief was reasonable. It is not disputed that Officer Simon was called to the cafe on a report that a patron

13

was refusing to pay her bill. Upon arrival, he spoke with plaintiff's server who informed him that plaintiff and her date, who had left without paying, had ordered and consumed $127.86 worth of food and drinks. The server reported to the officer that plaintiff's portion of the tab was $48.12 and that she was refusing to pay it.

Although plaintiff claims this amount did not represent the food that she had actually ordered, Officer Simon was "under no obligation to give credence to [her] story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). An officer who intends to execute a warrantless arrest is not tasked with an "overly-burdensome duty to investigate." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). "To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" *Id.*

Plaintiff's reliance on *Fouche, supra,* is misplaced. In that case, a criminal defendant challenged the sufficiency of the evidence used to convict him of disorderly conduct and theft. The court vacated the defendant's conviction after concluding that no reasonable jury could have found the defendant guilty of theft in the absence of evidence that the defendant intended to deprive the restaurant of its property without paying for it. The issue here is not whether there was sufficient evidence to convict the plaintiff of theft, but whether the officer had probable cause for arrest.

Summary judgment is granted as to Count Three.

### (c) Failure to intervene against Officer Linz

14

Count One alleges that Officer Linz is liable for failing to intervene to prevent the violation of plaintiff's constitutional rights.  A police officer may be held liable for failing to prevent the violation of a citizen's constitutional rights by another law enforcement officer. *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982).  To succeed on a failure to intervene claim, a plaintiff must prove that the officer observed or had reason to know that a citizen's constitutional right has been violated, and the officer must have "both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir.2008).

Plaintiff's failure to intervene claim asserts that Officer Linz failed to protect her from Officer Simon's alleged use of excessive force. Plaintiff provides no evidence that Officer Linz had the opportunity and means to prevent the use of force which occurred before plaintiff was placed in the police car.  It is undisputed that Officer Linz did not arrive at the cafe until after plaintiff was already in the car. (pltf.depo. 88-89; Linz depo. 18-20).

Plaintiff's claim that Officer Linz failed to protect her from false arrest also fails because plaintiff's claim against Officer Simon for false arrest has no merit.

Summary judgment is granted on the failure to intervene claim.

### (d) *Monell* Claims against the City of Wooster

Count Eleven of the plaintiff's complaint alleges § 1983 claims against the City of Wooster. A municipality cannot be held liable for the constitutional violations of its employees on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Rather, under *Monell* and its progeny, a municipality may be held liable only (1) "when execution of a government's policy or custom, whether made by its lawmakers or by those

15

whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell*,

436 U.S. at 694, and (2) when there is an "affirmative link between the policy and the particular

constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Thus, a

plaintiff must establish that the municipality's official policies or customs were a "moving force"

behind the deprivation of her rights.

Plaintiff asserts the City of Wooster's failure to investigate her arrest and to discipline the

officers involved in the arrest give rise to *Monell* liability. She maintains that Officer Simon's

affidavit of probable cause conflicts with his narrative report. In the narrative report, Officer

Simon indicated that plaintiff refused to pay for the items that Mr. Parris had ordered,[2] but the

affidavit to the prosecutor indicates that plaintiff refused to pay for the items that she herself had

ordered.[3] The plaintiff asserts that despite this discrepancy, Wooster's chief of police did not

conduct any investigation into the basis for plaintiff's arrest.

---

[2]The narrative report states in pertinent part:

> Bickel then told me that she believed she should not have to pay the entire bill as
> a man who she had met off an online dating service had ran out on her. I
> explained to Bickel that she was only responsbile for the $48.21 and not the entire
> bill of $127.86. Bickel told me that she believed that she was not responible for
> the bill for $48.12 as the man she had been with had actually ordered the items she
> consumed.

(Doc. 31-2).

[3]The affidavit to the prosecutor states, in pertinent part:

> Bickel was refusing to pay the entire bill as her date had already left. The caller
> [Ms. Stoner] did a complete separate receipt/bill for Bickel charging her for only
> the items she had actually ordered, however she refused to pay this bill as well.

(Doc. 31-3, pp. 1-2).

16

Plaintiff's *Monell* claim fails. The only potential constitutional violation in this case is Officer Simon's alleged use of excessive force. There is no connection or "affirmative link" between the failure to investigate the reports and the excessive force.

Summary judgment is granted as to Count Eleven.

### (e) Claims against the officers in their official capacities

"[A] section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). Thus, the plaintiff's duplicative official capacity claims against the individual officers are dismissed. *See Frieg v. City of Cleveland*, 2013 WL 3200628, at *2 (N.D. Ohio June 23, 2013) (dismissing official capacity claims duplicative of claims against a municipality).

### (2) State law claims

#### (a) State law immunity

Plaintiff asserts state law claims of assault and battery, intentional infliction of emotional distress, false arrest, and negligence against the Wooster defendants. Defendants argue they are statutorily immune as to these claims pursuant to Ohio Revised Code §§ 2744.02 and 2744.03. The immunity analysis in relation to a political subdivision, such as the City of Wooster, differs from that relating to political subdivision employees, such as the two officers in this case. *Lambert v. Clancy*, 125 Ohio St. 3d 231, 233-34, 927 N.E.2d 585, 588 (2010). Therefore, the City of Wooster will be addressed separately from the officers.

#### (i) City of Wooster

It is well-established that under Ohio Revised Code § 2744.02, political subdivisions are immune from intentional torts. *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450,

17

639 N.E.2d 105 (1994). Because the City of Wooster is a political subdivision under §
2744.01(F), it is immune from the plaintiff's claims of assault and battery, intentional infliction of
emotional distress, and false arrest. Thus, the remaining issue is whether the City of Wooster can
be held liable for the tort of negligence.

In determining whether a political subdivision, such as the City of Wooster, is statutorily
immune under Ohio law, the Court engages in a three-tiered analysis. *See id* at 588. Under the
first tier, a political subdivision is immune from liability in damages for acts of the political
subdivision or one of its employee in connection with a government function. *Id.*; *see also* Ohio
Revised Code § 2744.02(A)(1). The second tier provides five exceptions to this immunity.
*Lambert*, 927 N.E.2d at 588; see also Ohio Revised Code § 2744.02(B). If an exception applies,
courts move to the third tier to determine if immunity is reinstated under any of the defense
provisions in Ohio Revised Code § 2744.03. *Lambert*, 927 N.E.2d at 588.

In this case, with respect to the claims against the City of Wooster, the general grant of
immunity applies.  The provision of police services is a governmental function. Ohio Revised
Code § 2744.01(C)(2)(a). Thus, the general grant of immunity applies in this instance. Exceptions
to immunity include (1) operation of a motor vehicle (with some exceptions); (2) negligent
performance of proprietary functions; (3) failure to keep public roads in repair and free from
nuisance; and (4) negligence of an employee that occurs within or on the grounds of buildings
used in performing governmental functions. Further, political subdivisions may be liable if
liability is imposed by statute. Ohio Revised Code § 2744.02(B)(5). None of the listed exceptions
apply. Therefore, summary judgment is granted as to plaintiff's state law claims against the City.

### (ii) Officer Simon

Under Ohio Revised Code § 2744.03(A)(6), an employee of a political subdivision is personally immune from liability unless

> (a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

> (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

> (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code]

"[A]llegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties." *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994).

The only question is whether Officer Simon acted maliciously, in bad faith or in a wanton or reckless manner.  The term "malice" is defined as the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453  454 (Ohio Ct. App. 1991). The definition of "bad faith" involves "some interested or sinister motive" for which there is no "reasonable justification." *Hicks v. Leffler*, 119 Ohio App.3d 424 (Ohio Ct.App.1997). "Reckless" is defined as "disregard of the safety to others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Thompson v. McNeill*, 53 Ohio St.3d

102, 104  105 (Ohio 1990). Wanton misconduct has been defined as the failure to exercise any care whatsoever. *See Fabrey*, *supra* (citing *Hawkins v. Ivy*, 50 Ohio St.2d 114, syllabus (Ohio 1977) ).

There is sufficient evidence to demonstrate that Officer Simon acted with malice, in bad faith, or recklessly when effectuating the plaintiff's arrest for the same reasons discussed above in the federal excessive force claim. Therefore, Officer Simon is not entitled to statutory immunity.

### (iii) Officer Linz

Plaintiff asserts that Officer Linz is not immune from her claims of intentional infliction of emotional distress and negligence because he took steps to protect Mr. Parris from prosecution but not plaintiff.  The Court will not infer maliciousness or a bad faith motive based on Officer Linz's actions.  Officer Simon had a reasonable basis to arrest plaintiff for theft and there is no basis to find that Officer Linz acted in bad faith or with maliciousness in not seeking her release or dismissal of the charges.

Officer Linz is entitled to statutory immunity.

### (b) Merits of state law claims

To the extent that statutory immunity does not protect him, Officer Simon argues that plaintiff fails to provide sufficient evidence to support the elements of her state law claims for assault and battery, intentional infliction of emotional distress, and false arrest. The Court addresses each claim in turn.

### (i) Assault and battery against Officer Simon

20

Claims for assault and battery rise or fall with excessive force claims. *Kepley v. Lantz*, 2007 WL 2085401, at *11 (N.D.Ohio July 18, 2007). For the reasons stated previously, summary judgment is denied as to this claim.

### (ii) Intentional infliction of emotional distress

To succeed on an intentional infliction of emotional distress claim under Ohio law, a plaintiff must prove that

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
>
> (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
>
> (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and
>
> (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App. 3d 557, 562 (1997). Conduct giving rise to this claim must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St. 3d 369, 375 (1983) (overruled on other grounds )). "Serious" emotional distress must be "severe and debilitating." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983)

Plaintiff shows that she was diagnosed with post-traumatic stress disorder by a psychologist at the Cleveland Clinic (Plaintiff Declaration, Exhibit 2), but she fails to show that Officer Simon intended to cause her emotional injury or that his "conduct was outrageous and extreme and beyond all possible bounds of decency."

21

Summary judgment is granted on this claim.

### (iii) False arrest

Count Three alleges false arrest. "[T]o succeed on a claim of false arrest or imprisonment, a plaintiff must establish that she "was intentionally confined within a limited area, for any appreciable time, against [her] will and without lawful justification." *Strickland v. Tower City Mgmt. Corp.*, 1997 WL 793133, at *4 (Ohio App.Ct. Dec. 24, 1997). As already described, Officer Simon had probable cause to arrest plaintiff. Thus, this claim fails as well.

### <u>Conclusion</u>

For the foregoing reasons, the Wooster defendants' motion is granted as to all claims except  the § 1983 excessive force claim in connection with the arrest and state law claim of assault and battery against Officer Simon.  The Broken Rocks defendants' motion is granted.

IT IS SO ORDERED.


 /s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
Date:   11/09/15               United States District Judge